[counsel on signature page]

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| CAMBRONNE, INC., LISA BARRETTA, MATTHEW SACKS, and MICHAEL KOCHIN,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 5:25-cv-10897-PCP[1]<br><br>**JOINT INITIAL CASE MANAGEMENT STATEMENT**<br><br>Trial Date: None<br>Date Action Filed: December 22, 2025<br>Initial Case Management Conference Date: September 3, 2026<br>Time: 1:00 p.m.<br><br>Judge: The Hon. P. Casey Pitts |
| COGNELLA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 5:26-cv-04056-PCP<br><br>**JOINT INITIAL CASE MANAGEMENT STATEMENT**<br><br>Trial Date: None<br>Date Action Filed: May 4, 2026<br>Initial Case Management Conference Date: September 3, 2026<br>Time: 1:00 p.m.<br><br>Judge: The Hon. P. Casey Pitts |
| CHICKEN SOUP FOR THE SOUL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 5:26-cv-04218-PCP<br><br>**JOINT INITIAL CASE MANAGEMENT STATEMENT**<br>Trial Date: None<br>Date Action Filed: May 7, 2026<br>Initial Case Management Conference Date: September 3, 2026<br>Time: 1:00 p.m.<br><br>Judge: The Hon. P. Casey Pitts |

[1] The parties note that the *Cambronne* case was not among those scheduled for an initial case management conference on September 3. However, in light of the coordination of these actions and in the interest of efficiency, the parties address it in this submission.

| | |
|---|---|
| ANGIE CRUZ, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 5:26-cv-04482-PCP<br><br>**JOINT INITIAL CASE MANAGEMENT STATEMENT**<br><br>Trial Date: None<br>Date Action Filed: May 13, 2026<br>Initial Case Management Conference Date: September 3, 2026<br>Time: 1:00 p.m.<br><br>Judge: The Hon. P. Casey Pitts |
| R.O. KWON, ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHROPIC PBC,<br><br>Defendant. | Case No. 5:26-cv-04649-PCP<br><br>**JOINT INITIAL CASE MANAGEMENT STATEMENT**<br><br>Trial Date: None<br>Date Action Filed: May 15, 2026<br>Initial Case Management Conference Date: September 3, 2026<br>Time: 1:00 p.m.<br><br>Judge: The Hon. P. Casey Pitts |

## BACKGROUND AND INTRODUCTION

Pursuant to the Court's July 2, 2026, Order setting an Initial Case Management Conference in the above-captioned cases, Plaintiffs Cambronne, Inc., Lisa Barretta, Philip Shishkin, Matthew Sacks, and Michael Kochin (the "Cambronne Plaintiffs"); Cognella, Inc. ("Cognella"); Chicken Soup for the Soul, LLC ("Chicken Soup"); Angie Cruz, Sean Arbabi, Ascalon, LLC, Martin Atkins, Michael Ault, Jacob Bernstein, Matt Birkbeck, Charles Blackstone, Warren Bobrow, Jim Campbell, Dennis Carstens, Kerry Chance, Sinan Ciddi, Brian Copeland, Aya de Leon, Carolina De Robertis, Jaquira Diaz, Dave Eggers, John Ferejohn, Walter Gmelch, Nicole Gonzalez Van Cleve, Michael Goodrich, Ron Hall, Marla Heller, Daniel James, Lynn Sonberg, Lynn Sonberg Book Associates, and Vendela Vida (the "Cruz Plaintiffs"); and R.O. Kwon, Alexander Dreihann-Holenia, Stephanie Griest, Elizabeth Hinton, Brian Jackson, Jason Alan Jankovsky, Branden W. Joseph, Kimberly Kay Hoang, Glenn Kreisberg, Richard Krevolin, Gerald Lamb, Chang-rae Lee, Jeannie Levinson, Steven Lowenthal, Mackenzie Blue LLC, Brian Malec, Donna Matney, Ilona McCarty, Tiffany McDaniel, Brian Merchant, Eric L. Muller, Sonia Nazario, Daniel José Older, Laurence Ralph, Lilliam Rivera, Seth A. Roberts, Aida Salazar, Erika L. Sanchez, Jeremy N. Smith, Soul Writers, LLC, Ramesh Srinivasan, Robert Tannenbaum, Kenneth Warner, and Robert Zimmerman (the "Kwon Plaintiffs") (collectively, "Plaintiffs"), and Defendant Anthropic PBC ("Anthropic") (together with Plaintiffs, the "Parties"), hereby submit the following Joint Initial Case Management Statement in advance of the Initial Case Management Conference scheduled for September 3, 2026.

The five above-captioned actions arise from the same course of conduct and assert the same three claims. Each Plaintiff alleges that Anthropic obtained pirated copies of its copyrighted works—largely from online "shadow libraries" such as Books3 (and The Pile), Library Genesis ("LibGen"), Z-Library, Pirate Library Mirror ("PiLiMi"), and Anna's Archive—and then reproduced, distributed, and stripped copyright management information from those works in order to build, train, and optimize its Claude family of large language models. Each complaint asserts causes of action for (1) direct copyright infringement (17 U.S.C. § 501), premised on both unauthorized reproduction and unauthorized distribution; (2) contributory copyright infringement

(17 U.S.C. § 501); and (3) removal of copyright management information (17 U.S.C. § 1202(b)(1)). Anthropic denies these claims and denies all liability.

Because the five actions present common questions of law and fact, the Court granted an administrative motion for consolidated briefing. Pursuant to that order, Anthropic will file a single omnibus motion to dismiss directed to all five complaints, and Plaintiffs will file a single consolidated opposition.

The Parties are working cooperatively on a stipulated protective order and a stipulated order governing the discovery and production of electronically stored information, and expect to submit both to the Court promptly. The Parties agree that these cases can and should move forward expeditiously and efficiently in a coordinated manner, and that coordination of discovery and pretrial proceedings across the five actions will promote judicial economy and reduce the burden on the Parties and the Court.

**A. Jurisdiction and Service**

Plaintiffs assert claims exclusively under federal copyright law. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). Plaintiffs allege that this Court has personal jurisdiction over Anthropic, which is a Delaware public benefit corporation with its principal place of business in San Francisco, California, and which has purposefully availed itself of the privilege of conducting business in this District. Venue is proper under 28 U.S.C. § 1400(a). Anthropic does not contest personal jurisdiction or venue. Anthropic has been served in each of the five actions, and no parties remain to be served.

**B. Facts and Legal Issues**

<u>Plaintiffs' Statement</u>:

Plaintiffs are authors, publishers, and other owners of copyrights in books, textbooks, course materials, articles, and similar works. Anthropic is engaged in what it and its competitors have described as a "generative AI arms race," in which participants are under immense commercial pressure to train larger and better large language models more quickly than their rivals. High-quality, long-form copyrighted text is among the most valuable training material available. Rather than

license that material from its owners, Anthropic obtained vast quantities of it from notorious pirate sources.

Plaintiffs allege that Anthropic downloaded and reproduced pirated copies of their copyrighted works from shadow libraries and pirated datasets; that Anthropic used torrenting software, programs, or protocols to obtain those datasets, and in doing so simultaneously distributed pirated copies of Plaintiffs' works to other users of those torrent networks and induced and materially contributed to the infringement of others; and that Anthropic stripped copyright management information—including titles, authors' names, copyright notices, ISBNs, and terms and conditions of use—from Plaintiffs' works before or in the course of using them to train its models. Plaintiffs allege that Anthropic's conduct was unauthorized and willful.

The *Cambronne*, *Cruz*, and *Kwon* Plaintiffs are owners of works that appear on the Works List compiled in connection with the settlement in *Bartz v. Anthropic PBC*, No. 3:24-cv-05417 (N.D. Cal.), and each has opted out of that settlement in order to pursue this action in an individual capacity. Cognella is an academic publisher that owns or exclusively licenses thousands of copyrights in textbooks, course readers, custom course packs, and other learning materials. Chicken Soup owns or exclusively licenses numerous copyrights in books published under the Chicken Soup for the Soul brand. Plaintiffs allege that Anthropic downloaded, reproduced, and distributed millions of works beyond those reflected on the *Bartz* Works List, and that the full scope of Anthropic's infringement as to each Plaintiff will be established through discovery.

Plaintiffs anticipate that the principal factual issues in dispute will include: (a) which of Plaintiffs' works Anthropic downloaded, reproduced, retained, distributed, and used; (b) the sources from which Anthropic obtained those works and the means and methods it used to obtain them, including its use of torrenting protocols; (c) whether and how Anthropic removed or altered copyright management information from Plaintiffs' works, and its knowledge and intent in doing so; (d) the extent to which Anthropic's copies were retained, copied again, or incorporated into research and production data stores; (e) the commercial value Anthropic derived from Plaintiffs' works; and (f) the harm to Plaintiffs and to the licensing market for their works.

As to legal issues, Plaintiffs anticipate—based on *Bartz* and other litigation raising similar issues—that Anthropic will seek to justify its conduct by invoking the fair use doctrine. Plaintiffs contend that Anthropic's acquisition, retention, and distribution of pirated copies of their works was not fair use as a matter of law, and that at a minimum any fair use defense presents questions for the jury. Plaintiffs further anticipate disputes concerning the elements of a claim under 17 U.S.C. § 1202(b)(1), including the applicable knowledge and scienter standards; the availability and calculation of statutory damages, including the number of works infringed for purposes of 17 U.S.C. § 504(c); and the scope of contributory liability arising from Anthropic's use of peer-to-peer distribution protocols.

Plaintiffs seek all available relief, including statutory or actual damages under 17 U.S.C. § 504, statutory or actual damages under 17 U.S.C. § 1203(c), injunctive relief, an accounting, restitution, disgorgement, pre- and post-judgment interest, and costs, expenses, and attorneys' fees as permitted by law, including under 17 U.S.C. § 505 and 17 U.S.C. § 1203(b)(4)–(5).

<u>Anthropic's Statement</u>:

Plaintiffs allege they are authors and publishers whose books Anthropic used to train large language models (LLMs). Many Plaintiffs opted out of the *Bartz v. Anthropic* class settlement, which, now finally approved, will pay non-opt-out class members roughly $3,000 per book—several thousand dollars more than the cost of a copy, and "four times the minimum statutory damages for willful infringement." Final Class Settlement Approval, No. 24-cv-5417-AMO, Dkt. 680 at 4 (N.D. Cal. July 20, 2026). But the Plaintiffs here want more. Pursuing that, they filed five near-identical complaints, each pleading the same three counts for direct copyright infringement, contributory copyright infringement, and removal of copyright management information (CMI).

Anthropic is an AI safety and research company that develops the Claude family of LLMs. An LLM starts as an untrained neural network—a computational model built from layers of interconnected nodes that loosely mimic the human brain. Training exposes that network to enormous, diverse volumes of text—from web pages, scientific literature, code, and books—from which it learns statistical relationships in human language and facts about the world that are reflected

in numerical parameters. When training is complete, the training corpus itself is not stored in or consulted by the finished model, and the resulting model can perform tasks having nothing to do with any expressive text in the training corpus: agentically performing operations on a computer, writing code, answering questions, and reasoning through problems for millions of individual and business users.

Before ever releasing a commercial model, Anthropic downloaded books from online sources such as LibGen and PiLiMi to train internal research models. Anthropic later purchased and scanned books, which became the primary source of books used for training Anthropic's commercial LLMs. Data from books are a small fraction of the overall training corpus for Claude. No claimant in these cases or in *Bartz* has alleged that Claude reproduced text from their book to a Claude user. Rather, these cases allege infringement based solely on Anthropic's acquisition and use of books for the training process.

The central legal issue in these cases is whether using book text to train LLMs is fair use under 17 U.S.C. § 107. Both courts in this circuit to address that question have said yes, decisively. *See Bartz v. Anthropic*, 787 F. Supp. 3d 1007, 1021 (N.D. Cal. 2025) ("[T]he 'purpose and character' of [Anthropic's use of] works to train LLMs was transformative — spectacularly so."); *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1044 (N.D. Cal. 2025) ("There is no serious question that Meta's use of the plaintiffs' books had a 'further purpose' and 'different character' than the books—that it was highly transformative."). Where the courts parted ways is the question that the present cases should resolve. *Kadrey* held that a download cannot be assessed apart from the transformative training it enabled: "Because Meta's ultimate use of the plaintiffs' books was transformative, so too was Meta's downloading of those books." 788 F. Supp. 3d at 1047–48. *Bartz*, by contrast, left open the possibility that plaintiffs could prove at trial that Anthropic downloaded books for the separate use of building a "general-purpose library" separate from LLM training, and on that basis denied summary judgment for works downloaded from so-called "pirated" sources. 787 F. Supp. 3d at 1019, 1034.

The court also denied Anthropic's request for stay pending interlocutory appeal, insisting the

parties would have a trial on whether Anthropic's purpose was for developing LLMs—and thus, whether the downloads also constituted fair use—or instead building a "general-purpose library." No. 24-cv-5417-WHA, 2025 WL 2308091, at *3 (N.D. Cal. Aug. 11, 2025) ("Anthropic has maintained . . . that there was only one use, a fair use — training LLMs. And, the district court's orders have maintained that Anthropic will have every opportunity to perfect its affirmative defense at trial, presenting evidence for the jury to find the underlying facts needed for the judge to decide fair use in its favor (or not).") (record citations omitted).

Discovery in this case will show that Anthropic did not obtain books to create a "general-purpose library." There is no plausible or reasonable interpretation of the evidence to conclude Anthropic downloaded the books for any purpose other than to develop an LLM. That a company established for the singular purpose of developing LLMs would divert resources to assemble a general "library"—separate from LLM development—is not a plausible reading of the evidence. On the only purpose the record supports, *Kadrey*'s "ultimate purpose" framing controls, and this question is suited for early, case-dispositive resolution: acquisition merges with the transformative use it served, and the fair use defense resolves not only the direct infringement claims but the contributory and CMI claims that depend on the same conduct.

Plaintiffs here generally fit into three groups: those who validly opted out of the *Bartz* settlement; those who did not opt out, whose claims are barred by *res judicata*; and those asserting works outside the *Bartz* class, most of which fail because Anthropic never downloaded their works at all. Beyond fair use, Anthropic will raise the following threshold issues on its forthcoming motion to dismiss, at summary judgment, or other appropriate motion:

- **Statute of limitations.** All claims were filed more than three years after the accused acts, and none of the complaints alleges tolling or delayed accrual.
- ***Res judicata*.** Many Plaintiffs were *Bartz* class members who did not opt out; the *Bartz* judgment bars their claims on *res judicata* grounds.
- **No copying.** Many works were never downloaded by Anthropic. Some works in this category will require an evidentiary record to establish, while others can be decided on the

pleadings because their registrations confirm the works did not exist at the time of download and thus there is no plausible claim of copying.

- **No infringing output.** No complaint identifies a Claude output reproducing any Plaintiff's work. The "memorization" studies they cite involved aggressive jailbreaking—hundreds of prompts and hundreds of dollars in usage to extract text piece by piece—unrepresentative of ordinary use. Regardless, the studies' key findings largely tested other models, not Claude, and involved other books, not the works in suit.
- **Lack of standing, absent necessary parties.** Many Plaintiffs' registrations identify other parties as owners; even if cured, co-owners and publishers are necessary parties who should be identified, provided with notice, and joined if feasible.
- **No statutory damages or attorneys' fees.** Many works were registered after the accused downloads, foreclosing statutory damages and fees under 17 U.S.C. § 412(2).
- **Contributory infringement fails.** Plaintiffs identify no direct infringer who received any part of their work, relying only on a generic allegation that torrenting software is "often configured" to reupload files—insufficient under Supreme Court precedent.
- **CMI removal fails.** Plaintiffs lack Article III standing because any alleged removal occurred either before Anthropic downloaded the works or inside Anthropic's internal training pipeline and never reached the public. They also fail to identify the CMI at issue or plead either scienter element under 17 U.S.C. § 1202(b).
- **Claims limited to identified works.** Plaintiffs improperly assert a "non-exhaustive" list of unidentified works; each action should be confined to the identified works.

### C. Motions

The Court granted an administrative motion for consolidated briefing in the five above-captioned actions. *See Cambronne*, ECF No. 214. Pursuant to that order, Anthropic will file a single omnibus motion to dismiss directed to all five complaints, and Plaintiffs will file a single consolidated opposition on the following schedule: Anthropic's omnibus motion to dismiss due September 24, 2026; Plaintiffs' consolidated opposition due November 16, 2026; Anthropic's reply

due November 30, 2026; hearing on December 17, 2026.

No other motions are pending. Following the close of discovery, the Parties anticipate filing motions for summary judgment and *Daubert* motions, and the Parties anticipate that motions in limine and other pretrial motions will be filed in advance of trial.

**D. Amendments to Pleadings**

Plaintiffs' Statement:

Plaintiffs do not presently anticipate amending their complaints, and intend to respond to Anthropic's omnibus motion to dismiss on the operative pleadings, but reserve the right to amend and may do so if discovery confirms the existence of additional works of Plaintiffs that were copied. Plaintiffs reserve all rights to seek leave to amend, including for the reasons set forth below.

The exhibits to Plaintiffs' complaints identify non-exhaustive lists of registered copyrights, and Plaintiffs allege that Anthropic downloaded, reproduced, and distributed works beyond those identified to date. In Plaintiffs' view, Anthropic alone possesses the information necessary to determine the full set of Plaintiffs' works that it obtained, copied, distributed, and manipulated. Plaintiffs therefore propose that any deadline for amending the pleadings without leave of Court be set a reasonable period after Anthropic identifies, in response to Plaintiffs' discovery requests, all of Plaintiffs' works that it downloaded, torrented, reproduced, distributed, and manipulated. Plaintiffs propose that the Court set that deadline at a further case management conference following resolution of the omnibus motion to dismiss.

Anthropic's Statement:

**Deadline to amend**. The deadline to amend should be set now, not deferred indefinitely. Plaintiffs know which works they own and which publicly available repositories are at issue. Each Plaintiff compiled its own exhibit of asserted works before filing, and each opted out of (or remained in) the *Bartz* settlement on a work-by-work basis. Plaintiffs' proposal to keep the pleadings open until Anthropic completes discovery responses inverts the pleading burden and would leave the scope of these cases undefined well into discovery.

The Court should set a deadline for seeking leave to amend, as is the default under Rule 16.

Fed. R. Civ. P. 16(b)(3)(A). If Plaintiffs discover a new work at issue—which seems unlikely given the extent of public information available and the current over-inclusive list of asserted works—Plaintiffs can seek leave with the appropriate showing under Rules 15(a)(2) or 16(b)(4), depending on the timing of the amendment. Plaintiffs have identified nothing in this case that warrants a deviation from Rule 16's requirement to set an amendment deadline.

**Notice to Co-owners**. Separately, the Court should also address the absent-owners problem apparent from many of Plaintiffs' own copyright registrations: the existence of co-owners—both co-authors and commercial publishers—whose claims were also opted out of *Bartz* along with Plaintiffs' claims, but are not parties to this action.

These co-owners are necessary parties under Rule 19(a) and should, at the least, be identified by Plaintiff, given notice of this action affecting their ownership and commercial rights, and given an opportunity to join this action. Failure to do so raises substantial risk of prejudicing the absent co-owners' rights and interests (who likely retain a percentage interest in any recovery), and subjecting Anthropic to risk of follow-on litigation by absent co-owners—creating not only an unnecessary burden to Anthropic and the judicial system, but also risking duplicative or inconsistent obligations arising from a single work. *See Shropshire v. Canning*, No. 10-cv-1941-LHK, 2011 WL 90136, at *7 (N.D. Cal. Jan. 11, 2011) (ordering joinder of publisher of copyrighted work; "If Plaintiff were to receive any monetary judgment for Defendant's alleged copyright infringement, Kris Publishing would be entitled to its share of the proceeds. In addition, without Kris Publishing's participation in this action, Defendant would be subject to substantial risk of incurring double, multiple, or otherwise inconsistent obligations.").

In addition to Rule 19(a), the Copyright Act specifically contemplates notice and joinder of co-owners: "The court may require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest is likely to be affected by a decision in the case. The court may require the joinder, and shall permit the intervention, of any person having or claiming an interest in the copyright." 17

U.S.C. § 501(b). Indeed, the *Bartz* court took care to include co-owners such as publishers in the class, for each work, so "there is no risk of double jeopardy of defendant because there will be only one recovery per work." *Bartz v. Anthropic PBC*, 791 F. Supp. 3d 1038, 1052 (N.D. Cal. 2025).

To avoid duplicative, follow-on litigation involving potentially inconsistent claims of ownership and revenue rights, the Court should take a similar approach here by ordering, at the very least, that Plaintiffs identify co-owners and provide them with notice and invitation to join this action. Anthropic will be raising this issue in its forthcoming consolidated motion to dismiss.

**E. Evidence Preservation**

The Parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and the Checklist for ESI Meet and Confer, and have taken and will continue to take appropriate and proportionate steps to preserve evidence relevant to the issues reasonably evident in these actions, including issuing and monitoring litigation hold notices and suspending any document destruction practices that would otherwise apply to potentially relevant materials. The Parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding the reasonable and proportionate steps taken to preserve such evidence.

**F. Disclosures**

The Parties conducted their conference pursuant to Fed. R. Civ. P. 26(f) on August 13, 2026, and have agreed to serve initial disclosures under Fed. R. Civ. P. 26(a)(1) by September 17, 2026. The Parties anticipate that their initial disclosures will identify custodians and categories of documents relating to Anthropic's acquisition and use of training data, Plaintiffs' ownership of and licensing practices concerning the works at issue, and the Parties' respective damages contentions.

**G. Discovery**

No discovery has been exchanged to date in any of the five actions.

**1. Discovery Limits**

<u>Plaintiffs' Statement:</u>

Plaintiffs believe that simply following the Federal Rules would be more appropriate than the plainly unfair and lopsided proposal Anthropic sets forth below. Anthropic proposes to limit

Plaintiffs across all five cases to an arbitrarily selected total of 35 requests for production, 40 requests for admission and a single set of 25 interrogatories, while reserving for itself the ability to propound the same number of requests on *each* of 69 total Plaintiffs. Although Anthropic has cabined its proposal to no more than five non-"common" requests to each Plaintiff, that still brings the total number of unique requests Anthropic could propound to 1,035 (on top of the 75 "common" requests to each Plaintiff)—all while demanding that Plaintiffs be severely restricted in their ability to propound discovery requests on Anthropic. Plaintiffs are amenable to increasing the number of permitted depositions to permit Anthropic to depose each Plaintiff, but do not agree to Anthropic's request to be permitted to take even more depositions of "any other co-authors, co-owners, publishers, or other rightsholders of the works in suit." Given the complexity and scope of these cases, Plaintiffs believe an increase in the number of permitted depositions of 30(b)(1) depositions of Anthropic personnel to approximately 20 is warranted.

Plaintiffs agree that the Parties should meet and confer regarding deposition logistics, including scheduling, location, remote participation, and coordination across the five actions so that Anthropic's witnesses are deposed once for all five cases wherever practicable.[2]

Ultimately, rather than setting any numerical limits on discovery requests now, Plaintiffs believe it would be more productive for the Parties to continue to meet and confer about a reasonable compromise on appropriate mutual limits and adjustments. The Parties will then present any remaining disputes the Court.

<u>Anthropic's Statement:</u>

**Written Discovery**

These five actions involve nearly 70 plaintiffs and one defendant. The Federal Rules' presumptive discovery limits are written for cases with rough parity in the number of parties on each

[2] Anthropic suggests that discovery in these cases in these cases should be further coordinated with *Shakespeare v. Anthropic PBC*, No. 3:26-cv-05931-PCP (N.D. Cal.), a case that the Court has ordered related to *Cambronne* and brought on behalf of a group of authors by counsel different from Plaintiffs' counsel in these cases. While Plaintiffs agree that some degree of coordination is likely warranted, they reserve the right to oppose any proposal that would require them to share collective limits on discovery requests with the Plaintiffs in *Shakespeare*.

side. For example, Rule 33(a)(1) allows 25 interrogatories per party, which would permit more than 1,700 interrogatories directed to Anthropic across the five actions. Requests for production and requests for admission carry no numerical limit at all. Rule 26(b)(1) requires that discovery be proportional to the needs of the case, and Anthropic proposes modest modifications to keep the volume of written discovery within that bound.

Plaintiffs' discovery needs from Anthropic turn largely on conduct common to all Plaintiffs and all works. Plaintiffs' claims target the same course of conduct. Each alleges that Anthropic downloaded books from the same online sources, using the same protocols, and used them in the same training pipeline, and that the same scripts stripped copyright management information (CMI) along the way. Those allegations concern Anthropic's systems and practices rather than any individual book. Which datasets Anthropic downloaded, when and how it obtained them, how it processed and retained them, and what role they played in training are questions that will be answered largely the same way.

Some discovery may call for information specific to particular works or datasets. But that is a question of the content of a response, not the number of requests needed to obtain it. A single request for documents concerning Anthropic's acquisition of a given dataset reaches all Plaintiffs' works at once. A single interrogatory can ask Anthropic to identify which of the works listed in Plaintiffs' exhibits appear in each dataset at issue, and Anthropic will not argue that an interrogatory of that kind counts as multiple interrogatories under Rule 33(a)(1) because it calls for work-by-work information.

Conversely, discovery directed to Plaintiffs is individualized by nature, which is why the allocation on that side is per Plaintiff. The facts that vary most in these cases are Plaintiffs' facts. Ownership, standing, chain of title, registration facts, licensing history, damages, discovery of facts bearing on statute of limitations, and *Bartz* opt-out facts differ from Plaintiff to Plaintiff and, in many instances, from work to work. Anthropic cannot establish those facts through a single set of requests answered collectively, because each Plaintiff's answers will be its own. Anthropic proposes to keep that discovery efficient by serving requests that are largely common in substance, with each

Plaintiff answering as to its own works and its own facts—but with flexibility to serve a limited subset of individualized requests that may be unique to an individual Plaintiff. As a few examples: Chicken Soup Plaintiff has potential standing and ownership issues relating to its parent company's bankruptcy proceedings, which have nothing to do with other Plaintiffs. Plaintiff Kochin has an apparent ownership dispute with Penn State University over one of his works, which again is unique to that Plaintiff. And several Plaintiffs have unique circumstances of co-ownership, *Bartz* opt-out circumstances, and registration histories that may require individual inquiries not common to other Plaintiffs.

The below proposal reflects the proportional needs of the parties, which can serve as an initial starting point, and which, of course, can be modified for good cause as the case progresses.

**Interrogatories.** Plaintiffs, collectively across all five actions, may serve up to 25 interrogatories on Anthropic. Plaintiffs' counsel will designate single sets on behalf of all Plaintiffs. Anthropic may serve up to 25 interrogatories on each Plaintiff, of which no more than 5 may differ in substance from the common sets served on all Plaintiffs.

**Requests for production.** Plaintiffs, collectively across all five actions, may serve up to 35 requests for production on Anthropic. Plaintiffs' counsel will designate a single set on behalf of all Plaintiffs. Anthropic may serve up to 35 requests for production on each Plaintiff, of which no more than 5 may differ in substance from the common sets.

**Requests for admission.** Plaintiffs, collectively across all five actions, may serve up to 40 requests for admission on Anthropic. Anthropic may serve up to 40 requests for admission on each Plaintiff, of which no more than 5 may differ in substance from the common sets.

The sublimits cap the total volume of distinct discovery any Plaintiff will face. They reflect Anthropic's expectation that most of its written discovery will be common across Plaintiffs, directed at the elements each Plaintiff must prove or their contentions to Anthropic's anticipated defenses. A limited number of tailored requests remains necessary because each Plaintiff's claim rests on facts particular to that Plaintiff and its works.

**Depositions**. The Parties agree that Anthropic may take the deposition of each named

Plaintiff, notwithstanding Fed. R. Civ. P. 30(a)(2)(A)(i)'s presumptive ten-deposition limit. That agreement naturally follows from the structure of these cases. Each Plaintiff chose to sue in an individual capacity, and each must individually prove ownership, registration, chain of title, and damages, and individually answer Anthropic's defenses, including opt-out validity and the statute of limitations. Those facts belong to each Plaintiff alone and can be tested only through that Plaintiff's testimony.

The remaining dispute is narrow. Anthropic also seeks the ability to depose co-authors, co-owners, publishers, and other rightsholders of the works in suit where the registrations or chain-of-title documents place ownership in dispute. Their testimony bears directly on standing, ownership, and the absent-owner issues described in Section B above. Anthropic does not propose deposing every rightsholder for every work. If Plaintiffs believe a particular deposition is improper, the ordinary tools of Rule 26(c) and Rule 45 remain available. But there is no need to foreclose such depositions now.

Conversely, Plaintiffs' request for approximately 20 depositions of Anthropic personnel—an arbitrary doubling of the presumptive party limit—before serving a single discovery request, before initial disclosures, and before any identification of witnesses, is untethered to any showing of need. Plaintiffs do not even identify the first 10 proposed deponents, let alone who they envision for the other 10. And a vague and conclusory assertion that the case is "complex" fails to justify such a substantial doubling of Rule 30's presumptive limits. *See Rounds v. Bd. of Trs. of Cal. State Univ.*, No. 1:20-cv-170, 2022 WL 17978501, at *5–6 (E.D. Cal. Dec. 28, 2022) (denying leave to exceed ten depositions where plaintiff offered only "conclusory factual proffers," unsupported by sworn testimony or documents, and had "not conducted any depositions" which "compound[ed] the lack of a particularized showing of necessity").

Even in *Bartz*, a class action litigated through summary judgment and class certification on claims spanning millions of works, the plaintiffs took 13 depositions of Anthropic personnel on top of a corporate notice. These five actions are far narrower in every dimension—as explained in the next section in relation to Plaintiffs' request for the entire *Bartz* discovery record—which warrants

a limit closer to Rule 30's presumptive limit of 10 rather than the arbitrary doubling Plaintiffs propose. As explained above with respect to written discovery, Plaintiffs' claims target conduct common to all Plaintiffs and all works. As such, Plaintiffs should proceed under Rule 30's presumptive limit of 10 depositions, collectively across the five actions, with one coordinated Rule 30(b)(6) deposition of Anthropic. If, after discovery proceeds, Plaintiffs can show a substantial need for additional depositions beyond the 10-deposition presumptive limit, the parties can meet and confer, and Rule 30(a)(2) provides the mechanism for leave.[3]

### 2. Discovery from the Bartz Case

Plaintiffs' Statement:

Plaintiffs' claims substantially overlap with the claims litigated in *Bartz v. Anthropic PBC*, No. 3:24-cv-05417 (N.D. Cal.), and Plaintiffs anticipate that discovery here will overlap in substantial part with the discovery taken in that action. To avoid duplication and expense, Plaintiffs will seek the reproduction of the documents, data, deposition transcripts and exhibits, expert reports, and other materials produced or served in *Bartz*, other than materials specific to the *Bartz* plaintiffs. Plaintiffs request that Anthropic complete that reproduction promptly after entry of a protective order, on a rolling basis where third-party notice obligations apply.

Plaintiffs do not agree to be limited to the discovery obtained in *Bartz*. Plaintiffs anticipate serving their own document requests, interrogatories, and requests for admission, and taking their own depositions, directed to matters including the identification of Plaintiffs' specific works within Anthropic's datasets and data stores; Anthropic's acquisition of pirated datasets and its use of torrenting protocols; Anthropic's removal or alteration of copyright management information; Anthropic's retention and further copying of pirated materials; Anthropic's licensing negotiations and practices; and the commercial value Anthropic derived from Plaintiffs' works. Plaintiffs will work efficiently to address any gaps or differences in the scope and emphasis of their allegations as compared to *Bartz*, and will coordinate discovery across the five actions to avoid duplication.

---

[3] Although the Court did not include *Shakespeare v. Anthropic PBC*, No. 3:26-cv-05931-PCP (N.D. Cal.), in the joint case management conference, judicial efficiency warrants coordinated discovery and the same discovery limitations across all related cases.

<u>Anthropic's Statement</u>:

Before serving a single discovery request or even serving initial disclosures, Plaintiffs seek blanket access to the entire *Bartz* discovery record. Such blanket requests—not tailored to the case, claims, parties, works in suit, or defenses—are routinely rejected as improper and beyond the scope of discovery permitted under the Federal Rules. *See In re Volkswagen*, No. MDL 2672-CRB-JSC, 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017) (collecting cases and rejecting class action opt-out plaintiff's request for all discovery produced by defendant in the parallel class action; "The ADR Plaintiffs are not entitled to complete access to the MDL Production simply because there may be an overlap between their claims and those in the consolidated consumer class action."); *Chen v. Ampco Sys. Parking*, No. 08-cv-0422, 2009 WL 2496729, at *2 (S.D. Cal. Aug. 14, 2009) ("Although Plaintiff identifies certain similarities between the [cases], such similarities are not enough to require a *carte blanche* production of all documents from the [other] cases.").

Instead, the parties should comply with the Federal Rules of discovery. *In re Volkswagen*, 2017 WL 4680242, at *1 ("To better determine which documents in the MDL Production are relevant and which are not, the ADR Plaintiffs must comply with the Federal Rule by serving Volkswagen with requests for production [describing] with reasonable particularity each item or category of items to be inspected."). It "may very well be" that some discovery produced in *Bartz* is relevant to Plaintiffs' claims, but "Plaintiff[s] must [still] make proper discovery requests, identifying the specific categories of documents sought, in order to obtain them—and each category must be relevant to its claims and defenses." *King Cnty. v. Merrill Lynch & Co.*, No. 10-cv-1156, 2011 WL 3438491, at *2–3 (W.D. Wash. Aug. 5, 2011) (rejecting plaintiff's blanket request for all discovery exchanged in related government investigation).

While there is factual overlap between these actions and *Bartz*, the *Bartz* record is fundamentally wider in scope than the issues Plaintiffs present in these cases. First, Plaintiffs only allege infringement based on online downloads, while the *Bartz* class also alleged infringement based on Anthropic's purchasing and scanning millions of books. The substantial amount of *Bartz* discovery relating to the latter activities is not relevant to their online-download claims. Second,

Plaintiffs are about 70 alleged copyright owners alleging a few hundred works, while during the discovery phase the *Bartz* case involved putative classes comprising millions of authors and publishers and millions of works. Plaintiffs have no need for such a wide-ranging scope of discovery. Lastly, *Bartz* was a class action which necessitated extensive discovery on Rule 23 elements—numerosity, typicality, commonality—on each putative class, which is not relevant to Plaintiffs' claims. The discovery burdens appropriate for a putative class action asserting claims across millions of works, across multiple methods of copying, is not proportional to individual opt-out claims of fewer than 100 claimants asserting alleged infringement of a defined set of works.

Anthropic will, of course, cooperate in discovery. If Plaintiffs serve focused discovery requests identifying specific categories of materials relevant to their claims, which may also have been produced in *Bartz*—for instance, documents concerning the online-downloaded works at issue—Anthropic will respond in accordance with the Federal Rules and its relevance and proportionality obligations in this case. But the starting point is not wholesale reproduction; it is particularized requests complying with Rule 34(b)(1)(A).[4]

To the extent the Court is considering granting Plaintiffs' wide-ranging requests, Anthropic asks that the Court permit full briefing so these issues can be thoughtfully addressed on a proper record—as opposed to the abbreviated treatment a Case Management Statement allows.[5]

***

There are no currently identified discovery disputes. The Parties will meet and confer regarding any discovery disputes that arise in an effort to resolve them without Court intervention,

[4] Plaintiffs' request for the expert reports served in *Bartz* fails for the same reasons and is particularly unfounded. Those reports were prepared for different claims, different works, and a different record, including class certification issues not present here. The experts who prepared them have not been designated in these cases.

[5] Moreover, to the extent Anthropic reproduces material from *Bartz*, that reproduction should commensurately reduce Plaintiffs' need for duplicative discovery here, and any accommodation on that front should be weighed in setting limits on written discovery and depositions. If the overlap is as substantial as Plaintiffs contend, for example, a witness whose seven-hour *Bartz* deposition transcript Plaintiffs receive should not also sit for a second seven hours on the same subjects. Anthropic does not ask the Court to resolve that question now, but flags it as one the parties should address as discovery proceeds.

and will present any unresolved disputes to the Court in accordance with its standing orders. The Parties agree to electronic service in all instances where service is necessary.

**3. Production of Electronically Stored Information**

The Parties have reviewed the ESI Guidelines and have conferred pursuant to Fed. R. Civ. P. 26(f) regarding the discovery and production of electronically stored information. The Parties are working on a stipulated order governing the discovery and production of ESI, addressing production formats, metadata fields, de-duplication, search methodology, and the handling of privileged materials under Fed. R. Evid. 502(d), and expect to submit that stipulated order to the Court promptly. To the extent Plaintiffs seek discovery of Anthropic's training data and the Court finds such discovery relevant and proportional to Plaintiffs' claims, the parties will negotiate a Training Data Inspection Protocol governing Plaintiffs' inspection of that data.

**4. Protective Order**

The Parties are working on a stipulated protective order and expect to submit an agreed form to the Court promptly, or to identify any disagreements sufficiently in advance that the Court can resolve them at or before the Initial Case Management Conference.

**5. Discovery Issues and Potential Disputes**

The Parties will meet and confer on any discovery disputes that may arise in an effort to resolve them without Court intervention. The Parties will raise any unresolved disputes with the Court promptly and in accordance with its standing orders, and take no position at this time on whether discovery should be referred to a magistrate judge.

**H. Class Action**

None of the five above-captioned actions is a class action, and the Parties agree that these cases are not suitable for class treatment. Each Plaintiff proceeds in an individual capacity seeking individual relief. The *Cambronne*, *Cruz*, and *Kwon* Plaintiffs were members of the settlement class in *Bartz v. Anthropic PBC*, No. 3:24-cv-05417 (N.D. Cal.), and each has purportedly opted out of that settlement in order to pursue individual relief through these actions.

**I. Related Cases**

The five above-captioned actions have been related and are assigned to the Honorable P. Casey Pitts. The Parties are aware of *Bartz v. Anthropic PBC*, No. 3:24-cv-05417 (N.D. Cal.), and of other copyright actions pending against Anthropic in this District and elsewhere. The Parties are not aware of any other related cases or proceedings pending before another judge of this Court, or before another court or administrative body.

**J. Relief**

Plaintiffs assert claims for direct copyright infringement (Count I), contributory copyright infringement (Count II), and removal of copyright management information (Count III). Plaintiffs seek the following relief:

- Judgment in favor of Plaintiffs against Anthropic;
- A declaration that Anthropic has infringed Plaintiffs' exclusive copyrights under the Copyright Act;
- A declaration that such infringement is willful;
- A declaration that Anthropic violated 17 U.S.C. § 1202(b) through its removal of copyright management information;
- A permanent injunction enjoining Anthropic and all those acting in concert with it from engaging in the infringing conduct alleged;
- That Anthropic be directed to account to Plaintiffs for all gains, profits, and advantages derived from its unlawful acts;
- An award of statutory damages under the Copyright Act;
- An award of statutory or actual damages under 17 U.S.C. § 1203(c);
- An award of restitution, disgorgement, costs, expenses, and attorneys' fees as permitted by law, including those allowable under 17 U.S.C. § 505 and/or 17 U.S.C. § 1203(b)(4)–(5);
- Pre- and post-judgment interest on the damages awarded to Plaintiffs; and
- Further relief for Plaintiffs as the Court may deem just and proper.

Plaintiffs intend to elect statutory damages under 17 U.S.C. § 504(c) and 17 U.S.C. § 1203(c)(3), or, in the alternative, to seek actual damages and Anthropic's profits attributable to the infringement. Because the number of works at issue depends on information within Anthropic's possession, Plaintiffs cannot yet state the total amount of damages sought and will disclose their damages computations and methodology in accordance with Fed. R. Civ. P. 26(a) and the Court's scheduling order.

Anthropic's Statement:

Anthropic denies that Plaintiffs are entitled to any damages, injunction, or other equitable or monetary relief, and reserves all rights, claims, and defenses available to it under law, including attorneys' fees at the conclusion of these cases. Statutory damages and attorneys' fees are unavailable under 17 U.S.C. § 412 as to any work whose alleged infringement commenced before the effective date of its registration. Any award of statutory damages are subject to 17 U.S.C. § 504(c)(1), which permits one award per work regardless of the number of alleged infringements and all parts of a compilation or derivative work constitute one work.

**K. Consent to Magistrate Judge**

The Parties do not consent to have a magistrate judge conduct all further proceedings, including trial and entry of judgment.

**L. Other References**

The Parties agree that these cases are not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**M. Settlement and ADR**

The Parties have reviewed and will comply with ADR L.R. 3-5. The Parties do not expect that alternative dispute resolution would be productive at this time. The Parties believe that resolution of Anthropic's omnibus motion to dismiss and the exchange of core discovery bearing on the identification of Plaintiffs' works and the scope of Anthropic's conduct are necessary to position the Parties to negotiate any resolution. The Parties will promptly advise the Court if their views change. Anthropic has made settlement offers to each Plaintiff. To date, two have accepted

Anthropic's offers, one of whom has accepted Anthropic's offer of judgment.

**N. Narrowing of Issues**

<u>Plaintiffs' Statement:</u>

Plaintiffs believe a number of facts material to these cases may not be reasonably in dispute and are appropriate for stipulation. Those facts may include which shadow libraries and pirated datasets Anthropic downloaded; the means and methods Anthropic used to obtain those datasets, including the torrenting software, programs, or protocols it used; the works contained in the datasets Anthropic downloaded; Anthropic's use of software, scripts, or algorithms that stripped copyright management information from copyrighted works; Anthropic's retention and further reproduction of works after it initially obtained them; and the authenticity and admissibility of documents produced in *Bartz*.

The Parties jointly identify the following issues as the most consequential to these cases: (1) whether Anthropic's acquisition, retention, and use of pirated copies of Plaintiffs' works constituted fair use; (2) which of Plaintiffs' works Anthropic downloaded, reproduced, and distributed, and the resulting number of works for purposes of statutory damages; and (3) whether Anthropic removed or altered copyright management information from Plaintiffs' works with the knowledge required by 17 U.S.C. § 1202(b). The Parties believe resolution of these issues may be expedited through coordinated discovery across the five actions, targeted early discovery into the identification of Plaintiffs' works within Anthropic's datasets, stipulations as to authenticity and the reproduction of the *Bartz* record, and, if appropriate, cross-motions for summary judgment on fair use.

<u>Anthropic's Statement:</u>

Anthropic believes these cases can be narrowed substantially, and early. The first step is resolution of Anthropic's consolidated motion to dismiss, which will present threshold grounds that can eliminate claims, works, and potentially plaintiffs across all five actions. As a next step, works that do not appear in any dataset at issue cannot support any claim of copying. This issue can be the subject of a limited summary judgment motion, if those works identified are not already voluntarily dismissed by Plaintiffs once the initial exchanges of discovery occur. Lastly, as explained above in

Section B, a factual finding that Anthropic's purpose for acquiring books online was for LLM development—as opposed to building a "general-purpose library"—would supply the remaining element to perfect Anthropic's fair use defense under both *Bartz* and *Kadrey*. Anthropic believes these issues are readily resolved in Anthropic's favor on summary judgment, which would similarly dispose of Plaintiffs' ancillary contributory and CMI claims.

**O. Expedited Trial Procedures**

The Parties agree that these cases are not appropriate for the Expedited Trial Procedure of General Order 64.

**P. Scheduling**

Plaintiffs' Statement:

Plaintiffs believe these cases can move forward expeditiously and efficiently given the litigation that has already occurred in *Bartz*. Plaintiffs propose that the Parties proceed with their Rule 26(f) conference, initial disclosures, and the commencement of discovery now, without awaiting resolution of Anthropic's omnibus motion to dismiss, and that the Court set the remaining case schedule—including deadlines for amending the pleadings, expert designations and disclosures, the close of fact and expert discovery, the hearing of dispositive motions, the pretrial conference, and trial—at a further case management conference to be held after the Court rules on that motion.

Plaintiffs submit that permitting discovery to proceed in parallel with the motion to dismiss will avoid unnecessary delay and will not prejudice Anthropic, because much of the initial discovery consists of the reproduction of materials Anthropic has already produced in *Bartz*. Plaintiffs do not agree to any stay of discovery pending resolution of the omnibus motion to dismiss.

As noted above, the Parties have agreed that initial disclosures will be served by September 17, and the Parties are working to submit a stipulated protective order and stipulated ESI order promptly.

Anthropic's Statement:

Anthropic disagrees with Plaintiffs' position that no schedule should be entered. Anthropic proposes the following schedule, which provides adequate time for fact discovery and expert reports while satisfying the requirements of the Court's Standing Order.

As described above in Section N, there are a number of issues that can greatly narrow the scope of the case through an early summary judgment process shortly following the close of fact discovery and without the need for expert discovery. To that end, Anthropic proposes a "Non-expert summary judgment" deadline in advance of both expert discovery and the traditional "Dispositive motion" deadline.

| **Milestone** | **Date** |
|---|---|
| Discovery commences | Aug. 13, 2026 |
| Amend pleadings / join parties | Sep. 14, 2026 |
| Fact discovery cutoff | May 13, 2027 |
| Non-expert summary judgment | May 27, 2027 |
| ADR completion | Jun. 14, 2027 |
| Opening expert reports | Jun. 14, 2027 |
| Rebuttal expert reports | Jul. 14, 2027 |
| Expert discovery cutoff | Aug. 13, 2027 |
| Dispositive motion + *Daubert* (file by) | Aug. 26, 2027 |
| Trial-setting conference (Thu., 1:00 p.m.) | Jan. 13, 2028 |

**Q. Trial**

Plaintiffs have demanded a trial by jury on all claims so triable, pursuant to Fed. R. Civ. P. 38(b).

**R. Length of Trial**

Plaintiffs estimate that trial will take three to five weeks.

Anthropic's Statement:

Anthropic believes it is premature to estimate a trial length on any individual case considering the extent of dispositive issues to be resolved on Anthropic's motion to dismiss and summary judgment. Moreover, Plaintiffs' estimate of "three to five weeks" appears to assume a consolidated trial, which is something the parties have not conferred on, let alone briefed. Anthropic assumes these issues will be resolved after dispositive motions are ruled on and during the trial-setting conference proceedings.

**S. Disclosure of Non-party Interested Entities or Persons**

Plaintiffs:

Plaintiffs have filed their respective Certifications of Interested Entities or Persons under Civil Local Rule 3-15. The following listed persons, associations of persons, firms, partnerships, corporations, or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have any other kind of interest that could be substantially affected by the outcome of these proceedings:

- Cambronne, Inc., Lisa Barretta, Philip Shishkin, Matthew Sacks, and Michael Kochin, as Plaintiffs;
- Cognella, Inc., as Plaintiff;
- Chicken Soup for the Soul, LLC, as Plaintiff;
- Angie Cruz, Sean Arbabi, Ascalon, LLC, Martin Atkins, Michael Ault, Jacob Bernstein, Matt Birkbeck, Charles Blackstone, Warren Bobrow, Jim Campbell, Dennis Carstens, Kerry Chance, Sinan Ciddi, Brian Copeland, Aya de Leon, Carolina De Robertis, Jaquira Diaz, Dave Eggers, John Ferejohn, Walter Gmelch, Nicole Gonzalez Van Cleve, Michael Goodrich, Ron Hall, Marla Heller, Daniel James, Lynn Sonberg, Lynn Sonberg Book Associates, and Vendela Vida, as Plaintiffs;
- R. O. Kwon, Alexander Dreihann-Holenia, Stephanie Griest, Elizabeth Hinton, Brian

Jackson, Jason Alan Jankovsky, Branden W. Joseph, Kimberly Kay Hoang, Glenn Kreisberg, Richard Krevolin, Gerald Lamb, Chang-rae Lee, Jeannie Levinson, Steven Lowenthal, Mackenzie Blue LLC, Brian Malec, Donna Matney, Ilona McCarty, Tiffany McDaniel, Brian Merchant, Eric L. Muller, Sonia Nazario, Daniel José Older, Laurence Ralph, Lilliam Rivera, Seth A. Roberts, Aida Salazar, Erika L. Sanchez, Jeremy N. Smith, Soul Writers, LLC, Ramesh Srinivasan, Robert Tannenbaum, Kenneth Warner, and Robert Zimmerman, as Plaintiffs;

- Stris & Maher LLP, as Counsel for Plaintiffs; and
- Freedman Normand Friedland LLP, as Counsel for Plaintiffs.

Anthropic:

Anthropic has filed its Certification of Interested Entities or Persons under Civil Local Rule 3-15. The following listed persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations), or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: Google LLC, which is a wholly owned subsidiary of Alphabet, Inc., and Amazon Web Services, Inc., which is a wholly owned subsidiary of Amazon.com, Inc.

**T. Professional Conduct**

All attorneys of record for the Parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**U. Other**

The Parties are not aware of any other matters that may facilitate the just, speedy, and inexpensive disposition of these matters.

Dated: August 27, 2026

Respectfully Submitted,

By /s/ Yar Chaikovsky
**WHITE & CASE LLP**
YAR R. CHAIKOVSKY (CA 175421)
yar.chaikovsky@whitecase.com
ANDY LEGOLVAN (CA 292520)
andy.legolvan@whitecase.com
AMIR JABBARI (CA 339097)
amir.jabbari@whitecase.com
3000 El Camino Real
2 Palo Alto Square, Suite 900
Palo Alto, CA 94306-2109
Telephone: (650) 213-0300
Facsimile: (650) 213-8158

MARK DAVIES (*pro hac vice*)
mark.davies@whitecase.com
701 13th St NW # 600
Washington, DC 20005-3807
Telephone: (202) 626-3600
Facsimile: (202) 639-9355

*Attorneys for*
*Defendant Anthropic PBC*

By /s/ Elizabeth Brannen
**STRIS & MAHER LLP**
Elizabeth Brannen (SBN 226234)
ebrannen@stris.com
John Stokes (SBN 310847)
jstokes@stris.com
Lauren Martin (SBN 294367)
lmartin@stris.com
17785 Center Court Dr N, Ste 600
Cerritos, CA 90703
T: (213) 995-6800
F: (213) 261-0299

Bridget Asay (*pro hac vice*)
basay@stris.com
15 East State Street, Ste 2
Montpelier, VT 05602
T: (802) 858-4285

Christopher M. Rigali (*pro hac vice*)
crigali@stris.com
Jacqueline Sahlberg (*pro hac vice*)
jsahlberg@stris.com
1601 K Street NW, Ste 1050
Washington, DC 20006
T: (202) 800-5749

**FREEDMAN NORMAND FRIEDLAND LLP**
Kyle Roche (*pro hac vice*)
kroche@fnf.law
Devin (Velvel) Freedman (*pro hac vice*)
vel@fnf.law
155 E. 44th Street, Ste 915
New York, NY 10017
T: (646) 494-2900

*Counsel for Plaintiffs*

**FILER'S ATTESTATION**

I, Elizabeth Brannen, am the CM/ECF user whose ID and password are being used to file this Joint Initial Case Management Statement. Pursuant to Civil Local Rule No. 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: August 27, 2026

By */s/ Elizabeth Brannen*
Elizabeth Brannen